UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARIA O NARANJO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-09-240 |
| | § | |
| UNIVERSAL SURETY OF AMERICA, *et* | § | |
| *al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

On this day came on to be considered (1) Defendant Sherman General Partners SPE LLC's Rule 12(b)(1), 12(b)(4), 12(b)(5), and 12(b)(6) Motion to Dismiss and Memorandum of Points and Authorities (D.E. 14), (2) Defendant Sherman Acquisitions LP's Rule 12(b)(1), 12(b)(4), 12(b)(5), and 12(b)(6) Motion to Dismiss and Memorandum of Points and Authorities (D.E. 15), (3) Defendant James N. Hull & Associates, PC's Rule 12(b)(1) and 12(b)(6) Motion to Dismiss and Memorandum of Points and Authorities (D.E. 16), and (4) Defendant Universal Surety of America's Rule 12(b)(1) and 12(b)(6) Motion to Dismiss and Memorandum of Points and Authorities (D.E. 17).  For the reasons stated herein, Defendants' Motions are DENIED in their entirety.  Plaintiff, however, is ORDERED to file an amended complaint that complies with the pleading requirements of Federal Rules of Civil Procedure 8(a) and 9(b) within ten (10) days after entry of this Order.

## I.    Factual and Procedural Background

Plaintiff filed her Original Complaint in this action on September 14, 2009.  (D.E. 1.)  Named as Defendants in this Complaint are James N. Hull & Associates PC ("Hull"),

Universal Surety of America ("Universal Surety"),[1] Sherman Acquisitions LP ("Sherman Acquisitions"), Sherman General Partner SPE LLC (the general partner of Sherman Acquisitions LP) ("Sherman GP"), and certain other as-yet unidentified related entities designated as "Sherman John Does 1, 2, & 3." Collectively, the Sherman entities are referred to as "Sherman" in the Complaint and in this Order. (D.E. 1 at 2-4.)   The following facts are derived from Plaintiff's Original Complaint.  (D.E. 1.)

On or about August 3, 2001, Defendant Hull, a debt collection law firm, obtained a default judgment against Plaintiff in Providian National Bank v. Mary O. Naranjo, Cause No. 3,588, Justice Court, Pct. 1, San Patricio County, for alleged credit card debt. According to Plaintiff, when Defendant Hull sought default judgment it knew that the debt was barred by the statute of limitations, but nevertheless "intentionally sought and obtained judgment."  (D.E. 1 at 5.)

Plaintiff states that Hull twice abstracted the judgment pursuant to Texas law.  On May 15, 2002, Hull abstracted the judgment under the style of Providian National Bank v. Mary O. Naranjo.  Then, on October 20, 2008, Hull again abstracted the judgment, now styled as Sherman Acquisition LP as assignee of Providian National Bank v. Mary Naranjo.  Plaintiff alleges that, when Defendants Hull and Sherman abstracted the judgment, they knew that the judgment was based on a time barred debt. (D.E. 1 at 5.)

On or about August 5, 2008, Plaintiff's home was destroyed by a fire, rendering Plaintiff homeless. Plaintiff sought to obtain financing to purchase a mobile home in which to live, but the abstracted judgment allegedly prevented Plaintiff from being able

---

[1] According to the Complaint, Universal Surety is the bonding company for Hull.  Plaintiff states that, pursuant to Texas law, Tex. Fin. C. § 392.102, and the terms of the bond agreement itself, Universal Surety is liable for the Texas debt collection claims that Plaintiff brings against Hull, up to the amount of the bond. Thus, where the Complaint references the liability of Hull for violations of the Texas Debt Collection Act, that liability refers to Universal Surety.  (D.E. 1 at 2.)

to obtain financing.  (D.E. 1 at 5.)  Plaintiff claims that Hull and Sherman knew that Plaintiff lost her home, knew she had to obtain financing, and knew that the default judgment prevented her from doing so.  Plaintiff further states that Hull and Sherman double abstracted the judgment and maintained the abstract of judgment for a debt they knew was time barred "for the purpose of attempting to extract money from Plaintiff, who is indigent."  (D.E. 1 at 5-6.)

Plaintiff states that, on October 28, 2008, Defendant Sherman, acting though Hull, sent Plaintiff discovery in aid of execution on the judgment on the time barred debt. Plaintiff states that the discovery and accompanying cover letter constituted an "initial communication" by Defendant Sherman within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g(a), but Sherman did not include the statutorily required disclosures to Plaintiff in this communication, or within 5 days of the communication, advising Plaintiff of her rights, including her right to dispute the debt.  (D.E. 1 at 6.) Plaintiff retained an attorney, who then entered into a Rule 11 Agreement as to discovery issues and communicated about the case with Defendants.  (D.E. 1 at 6.)

On May 5, 2009, Sherman, through Hull, allegedly made a settlement demand directly to Plaintiff, even though it was aware that Plaintiff was represented by counsel. The settlement demand was for $11,993.79, on a principal amount of $3,391.40.[2] Plaintiff claims that Sherman Acquisitions and Hull continue to maintain an abstract on the judgment "they know was obtained on a time barred debt," and this continues to inflict damages on Plaintiff.  (D.E. 1 at 6.)

Plaintiff states that Sherman never posted a bond with the Texas Secretary of State, which is a condition precedent to be able to collect an alleged consumer debt in

---

[2] The Original Complaint states that the principal is $3,3391.40, which appears to be a typographical error.

Texas.  Alternatively, Plaintiff states that Sherman and Hull took the above actions recklessly and with a conscious disregard for Plaintiff's rights.  (D.E. 1 at 7.)

Plaintiff brings several causes of action based upon these allegations.  First, Plaintiff brings a claim for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").  According to Plaintiff, when Defendants sought to collect on the debt, they allegedly misrepresented the character, status, and amount of the debt, attempted to collect an amount not permitted by law or contract, threatened to take, and actually took actions prohibited by law, used false, deceptive or misleading representations or means, used unfair or unconscionable means, contacted a consumer represented by counsel, and engaged in conduct meant to harass, in violation of 15 U.S.C. § 1692b-g.  (D.E. 1 at 8.)  Second, Plaintiff alleges violations of the Texas Fair Debt Collection Act, Tex. Fin. C. § 392.001 et seq., ("TDCA") based primarily on the same allegations raised with respect to the FDCPA, and claiming that Defendants made repeated telephone calls in an attempt to harass Plaintiff.  (D.E. 1 at 9.)  Third, Plaintiff brings a claim for tortious unfair debt collection, based on the conduct outlined above.  (D.E. 1 at 10.)  Finally, Plaintiff brings claims for fraud and intentional misrepresentation, alleging that Hull and Sherman made false statements of fact and made statements of opinion based on false statements of fact, and Plaintiff relied upon these misrepresentations.  (D.E. 1 at 10-11.)  Plaintiff seeks broad relief, including statutory damages, equitable relief, actual, economic, punitive, and exemplary damages, attorney's fees, and an injunction preventing Defendant from engaging in similar unlawful conduct now and in the future.  (D.E. 1 at 11-12.)

This action was initially dismissed on November 10, 2009 pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute.  (D.E. 3.)  Plaintiff thereafter filed a motion to reinstate, which the Court granted on December 1, 2009.  (D.E. 7; Naranjo v. Universal Surety of America, et al., 2009 WL 4667402 (S.D. Tex. Dec. 1, 2009).)

After reinstatement, Defendants Sherman GP, Sherman Acquisitions, Hull, and Universal Surety each filed a Motion to Dismiss, all of which raise similar arguments. (D.E. 14, 15, 16, 17.)  Specifically, the Sherman Defendants request dismissal pursuant to (1) Rule 12(b)(1), as the Court lacks subject matter jurisdiction based on the Rooker-Feldman doctrine (D.E. 14 at 2-6; D.E. 15 at 2-6), (2) Rule 12(b)(4) and Rule 12(b)(5), due to insufficient process and insufficient service of process (D.E. 14 at 6-9; D.E. 15 at 6-9), and (3) Rule 12(b)(6) for failure to state a claim (D.E. 14 at 9-17; D.E. 15 at 9-17). Defendants Hull and Universal Surety also bring motions to dismiss based upon Rule 12(b)(1) and Rule 12(b)(6), but do not challenge sufficiency of process or service of process.  (D.E. 16, 17.)

## II.   Discussion

It is well established that, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."  Ramming v. U.S., 281 F.3d 158, 161 (5th Cir. 2001).  Therefore, the Court first considers Defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, based upon the Rooker-Feldman doctrine.

A.    **Subject Matter Jurisdiction (Rule 12(b)(1))**

1.    **General Rules Applicable to Rule 12(b)(1) Motion to Dismiss**

When a party challenges a court's subject matter jurisdiction under Rule 12(b)(1), it can make either a "facial attack" or a "factual attack."   As the Fifth Circuit has explained, "[a] 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. A 'factual attack,' however, challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. Moreover, a 'factual attack' under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist." Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980) (internal citations omitted); see also Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981) ("Simply stated, if the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands. If a defendant makes a 'factual attack' upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials. In the latter case a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction."); Moussazadeh v. Texas Dep't of Crim. Justice, 2009 WL 819497, at *7 (S.D. Tex. Mar. 26, 2009) (discussing difference between factual and facial attacks).

In this case, the Court understands Defendants to make a facial attack, as they do not submit affidavits, testimony, or other evidentiary materials in support of their Rule 12(b)(1) motion, and this motion is made at an early stage of the proceedings.  As such, the Court must "merely . . . see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."  Menchaca, 613 F.2d at 511.

### 2.      **Rooker-Feldman Doctrine**

As opposed to state courts, "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378 (1994).

The Rooker-Feldman doctrine represents an important limit on the subject matter jurisdiction of federal courts.  Under this doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments."  Lance v. Dennis, 546 U.S. 459, 463 (2006); see District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923).   The Supreme Court recently clarified the scope of the doctrine in Exxon Mobil Corp. v. Saudi Basic Industries Corp., explaining, "The Rooker-Feldman doctrine . . . is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."   544 U.S. 280, 284 (2005).  Rooker-Feldman thus "precludes a United States district court from exercising subject-matter

jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." Id. at 291; Alvarez v. Midland Credit Management, Inc., 585 F.3d 890, 894 (5th Cir. 2009).

A plaintiff "cannot circumvent [Rooker-Feldman] by asserting claims not raised in the state court proceedings or claims framed as original claims for relief. If the district court is confronted with issues that are 'inextricably intertwined' with a state judgment, the court is 'in essence being called upon to review the state-court decision,' and the originality of the district court's jurisdiction precludes such a review." United States v. Shepherd, 23 F.3d 923, 924 (5th Cir. 1994) (quoting Feldman, 460 U.S. at 482 n. 16); see Turner v. Cade, 2009 WL 3817007, at *2 (5th Cir. Nov. 16, 2009) (citing Shepherd, 23 F.3d 923). The exact definition of "inextricably intertwined" is unclear after Exxon Mobil, but courts have generally interpreted it consistent with the Supreme Court's clarification of the doctrine in Exxon Mobil. See, e.g., McCormick v. Braverman, 451 F.3d 382, 394-95 (6th Cir. 2006) ("In short, the phrase 'inextricably intertwined' only describes the conclusion that a claim asserts an injury whose source is the state court judgment, a claim that is thus barred by Rooker-Feldman."); Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 87 (2d Cir. 2005) ("[T]he phrase 'inextricably intertwined' has no independent content. It is simply a descriptive label attached to claims that meet the requirements outlined in Exxon Mobil."). The Fifth Circuit has not yet spoken on this issue, though it has continued to reference the "inextricably intertwined" test. MAPP Const., LLC v. M&R Drywall, Inc., 249 Fed. Appx. 89, 91 (5th Cir. 2008) ("[R]eview is precluded by Rooker-Feldman whenever success on the federal claim depends upon a determination that the state court wrongly decided the issues before it.").

In this case, Defendants argue that Plaintiff is barred from asserting claims on the basis of Rooker-Feldman.  Assuming that Defendants did sue on a time-barred debt, they argue, those violations were ripe for adjudication when the suit was filed; Plaintiff could have raised limitations defenses or asserted counterclaims in the collection suit.  (D.E. 14 at 6; D.E. 15 at 6; D.E. 16 at 6; D.E. 17 at 6.)  Plaintiff's failure to do so, according to Defendants, precludes her from asserting those claims now.  Thus, Defendants conclude that Plaintiffs' claims must be dismissed because "Plaintiff seeks to have this Court determine not only the propriety of a pleading filed in another court, but to set aside or render void the final judgment entered by that court on August 3, 2001.  This Court lacks jurisdiction to grant the requested relief."  (Id.)

Since the Exxon Mobil decision, several courts "have considered the applicability of the Rooker-Feldman doctrine to the situation where creditors obtain a judgment in state courts but subsequently have their debt collection practices challenged under the FDCPA in federal court."  Druther v. Hamilton, et al., 2009 WL 4667376, at *4 (W.D. Wash. Dec. 3, 2009).  These courts have concluded that, "when the FDCPA plaintiff is not challenging the validity of the debt, but rather the collection practices of the creditor, the FDCPA claim is independent from the state court collection action and the federal court has subject matter jurisdiction over that FDCPA claim."  Id.  In Senftle v. Landau, 390 F. Supp. 2d 463 (D. Md. 2005), a debtor filed a complaint against a debt collection agency for violations of the FDCPA after a state court entered default judgment against the debtor.   The state court rejected the defendant's Rooker-Feldman argument, explaining, "[w]here a federal plaintiff alleges an independent claim that the state court failed to remedy, a federal court may consider that claim.  Here [Plaintiff's] allege[d] four

violations of the FDCPA, all of which pertain to the manner in which [Defendant] collected [Plaintiff's] debt, not the validity of the underlying debt.  That, in the Court's view, suffices to permit the claims to go forward in this Court."  390 F. Supp. 2d at 469. Similarly, in Jenkins v. Gen. Collection Co., 538 F. Supp. 2d 1165 (D. Neb. 2008), the court held that Rooker-Feldman did not apply to a federal court suit alleging that a debt collector's alleged practice of bringing actions to collect on time-barred debts and misrepresenting the nature and character of the debt violated the FDCA and the Nebraska Consumer Protection Act.  The court reasoned:

> [Plaintiffs] note that they are not seeking to vacate the state-court judgments and are not asking this Court to review or reject those judgments. Instead, they are asserting that the Defendants' alleged practice of bringing time-barred collection actions and misrepresenting the nature and character of the debt violates the FDCPA and NCPA.  While it was possible, and may have been advisable, for [Plaintiffs] to raise as affirmative defenses in the state-court proceedings some of the issues they now raise in this action, their claims under the FDCPA and NCPA are not inextricably intertwined with the state-court actions. As noted above, the state-court default judgments did not involve the actual litigation of any issue underlying the Plaintiffs' claims in this case, and this action will not involve the review or rejection of those state-court judgments.

538 F. Supp. 2d at 1171-72.  The court in Druther v. Hamilton arrived at the same conclusion in a suit brought under the FDCPA after a collection agency obtained a default judgment against the plaintiff in state court.  The court explained, "[t]he courts are clear that the FDCPA applies to the collection of the debt. It does not apply to the validity of the debt. Plaintiff is not seeking to overturn the money judgment on the debt that was entered against him in state court. Rather, he is seeking statutory and actual damages for Defendant's debt collection practices. He is not asserting as his injury legal errors by the state court and is not seeking relief from the state court judgment. Therefore, the Rooker-Feldman doctrine does not preclude Plaintiff's claims."  2009 WL 4667376, at *4.  Other

courts have come to the same conclusion. <u>See, e.g.</u>, <u>Foster v. D.B.S. Collection Agency</u>, 463 F. Supp. 2d 783, 798 (S.D. Ohio 2006) ("Plaintiffs are not attempting to appeal their state court judgments in federal district court.  Plaintiffs' alleged injuries here are not the result of the state court judgments themselves, but rather from the allegedly illegal practices Defendants used to obtain those state court judgments. . . .  Because Plaintiffs' claims in federal court are independent of the state court judgments, the <u>Rooker-Feldman</u> doctrine does not bar Plaintiffs' claims here."); <u>see also</u> <u>Todd v. Weltman, Weinberg & Reis Co., L.P.A.</u>, 434 F.3d 432, 437 (6th Cir. 2006) ("Plaintiff here does not complain of injuries caused by this state court judgment, as the plaintiffs did in <u>Rooker</u> and <u>Feldman</u>. Instead, after the state court judgment, Plaintiff filed an independent federal claim that Plaintiff was injured by Defendant when he filed a false affidavit. This situation was explicitly addressed by the <u>Exxon Mobil</u> Court when it stated that even if the independent claim was inextricably linked to the state court decision, preclusion law was the correct solution to challenge the federal claim, not <u>Rooker-Feldman</u>.")

The Court finds the reasoning in these decisions persuasive.  As in these other cases, Plaintiff here is not asking this Court to review or reject the state default judgment itself.  Rather, Plaintiff is complaining about Defendants' alleged practices of bringing time-barred collections actions, and committing numerous violations under the FDPCA and state law.  In light of the latest expression of the <u>Rooker-Feldman</u> doctrine as stated by the Supreme Court in <u>Exxon Mobil</u>, and the persuasive authority discussed above, the Court concludes that the <u>Rooker-Feldman</u> doctrine does not deprive the Court of subject matter jurisdiction over this action.

Thus, the Court denies Defendants' Rule 12(b)(1) Motions to Dismiss for lack of subject matter jurisdiction.

**B.      Insufficient Process and Insufficient Service of Process (Rule 12(b)(4), Rule 12(b)(5))**

Defendants Sherman GP and Sherman Acquisitions argue that the claims against them should be dismissed pursuant to Rules 12(b)(4) or 12(b)(5), for insufficient process or insufficient service of process.  (D.E. 14 at 6-9; D.E. 15 at 6-9.)

Rule 12(b)(4) allows a defendant to attack the form of the process, rather than the method by which it is served. See Fed. R. Civ. P. 12(b)(4). Problems of form arise, for example, where the party to be served is improperly named.  Marine Geotechnics, LLC v. Williams, 2009 WL 2144278, at *2 (S.D. Tex. July 13, 2009); Margetis v. Ray, 2009 WL 464962, at *4 (N.D. Tex. Feb. 25, 2009) ("Process may be insufficient if the summons and complaint refer to a party in the wrong name.").  Rule 12(b)(5), in contrast, "permits a challenge to the method of service attempted by the plaintiff, or the lack of delivery of the summons and complaint."  See Neely v. Khurana, 2008 WL 938904, at *2 (N.D. Tex. Apr. 7, 2008); Fed. R. Civ. P. 12(b)(5).  A federal court is without personal jurisdiction over a defendant unless the defendant has been served with process in accordance with Federal Rule of Civil Procedure 4.  Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987) ("Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").  "When service of process is challenged, the party on whose behalf it is made must bear the burden of establishing its validity."  See Aetna Business Credit Inc. v. Universal Decor and Interior Design, 635 F.2d 434, 435 (5th Cir. 1981); Nabulsi v. Nahyan, 2009 WL 1658017, at *4 (S.D. Tex. June 12, 2009) (citing Aetna).

Rule 4(h) governs service of process on a corporation.  Rule 4(h) provides, in relevant part:

> Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
> (1) in a judicial district of the United States:
>
>> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>>
>> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant . . . .

Fed. R. Civ. P. 4(h).  Rule 4(e)(1) in turn states, "[u]nless federal law provides otherwise, an individual . . . may be served in a judicial district of the United States by (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made. . . ."  Fed. R. Civ. P. 4(e)(1).  Rule 4 is "designed to provide maximum freedom and flexibility in the procedures for giving all defendants . . . no matter where they might be located, notice of the commencement of the action."  Fyfee v. Bumbo Ltd., 2009 WL 2996885, at *2 (S.D. Tex. Sep. 16, 2009) (quoting 3d Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1061, at 11-12 (2002)); Bisby v. Garza, 2008 WL 4179237, at *2 (S.D. Tex. Sep. 8, 2008) ("Rule 4(h) is intended to ensure that an association is on notice of a lawsuit against it. The principal purpose of the Rule with respect to service on an agent of the corporation or association is to render it reasonably certain that the corporation will

receive prompt and proper notice in an action against it.") (internal quotation marks omitted).

Defendants Sherman GP and Sherman Acquisitions argue that Plaintiff's service on them, through the Secretary of State of Texas, was not in strict compliance with the Texas long-arm statute.  Defendants argue that neither process nor service of process strictly complied with Texas law, as the Secretary of State of Texas is not Sherman GP or Sherman Acquisitions' "registered agent," and the direction to the Secretary to forward service to each Defendant's "registered agent" does not comply with statutory prerequisites.  (D.E. 14 at 7-8; D.E. 15 at 7-8.)   Defendants contend that the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.045(a), requires that the Secretary of State forward the complaint and summons to the non-resident's "home or home office," and if nothing on the face of the record shows the forwarding address was the defendant's home or home office, service is fatally defective.  The Complaint here does not mention either Sherman GP or Sherman Acquisitions' home or home office, nor a forwarding address, and the address of an alleged registered agent in Delaware is insufficient as a matter of law.  Thus, without proof that service was made in strict compliance with the Texas long-arm statute, the Court cannot exercise personal jurisdiction over Sherman GP or Sherman Acquisitions.  (D.E. 14 at 8; D.E. 15 at 8.)

In this case, the Court concludes that service on both Defendants is proper.  Under Federal Rule of Civil Procedure 4(h)(1)(B), a plaintiff may serve a corporation or partnership "by delivering a copy of the summons and of the complaint to an . . . agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the

defendant." Here, Plaintiff alleges that the Sherman Defendants no longer maintain a designated agent for service of process in Texas. Plaintiff thus chose to serve Defendants through the Texas Secretary of State. (D.E. 1 at 3; D.E. 11; D.E. 12.) Several provisions of Texas law designate the Texas Secretary of State as an agent for service of process on a non-resident that does not have a registered agent in the state. See Tex. Civ. Prac. & Rem. Code § 17.044(b); Tex. Vernon's Ann. Texas Civ. St. Art. 6132b-10.05(k); Tex. Bus. Corp. Act. Art. 8.10(B). Importantly, these statutes impose a duty upon the Secretary of State, not the Plaintiff, to forward service to Defendants. See Tex. Civ. Prac. & Rem. Code § 17.045(a) ("[T]he secretary of state shall immediately mail a copy of the process to the nonresident at the address provided."); Tex. Vernon's Ann. Texas Civ. St. Art. 6132b-10.05(j) ("If any process, notice, or demand is served on the secretary of state, the secretary of state shall immediately forward one of the copies by registered mail addressed to the foreign limited liability partnership . . . ."); Tex. Bus. Corp. Act. Art. 8.10(B) ("In the event any such process, notice or demand is served on the Secretary of State, he shall immediately cause one of such copies thereof to be forwarded by registered mail. . . .").

As Texas law designates the Texas Secretary of State as an agent to receive service of process for a non-resident without an in-state designated agent and does not require the Plaintiff to mail a copy to each Defendant, Plaintiff's service on the Sherman Defendants through the Texas Secretary of State is proper under Rule 4(h)(1)(B). See, e.g., Ultradent Products, Inc. v. Hayman, 2002 WL 31119425, at *3 (S.D.N.Y. Sep. 24, 2002) (permitting service of a subpoena to a corporation upon the New York Secretary of State because it was 'reasonably measured to insure the actual receipt of the subpoena by

the corporation'"). Further, the summons contains the required elements under Rule 4(a), properly names each Defendant, provides the correct address of the Texas Secretary of State for service, and the Complaint lists the name and address of each Defendant's registered agent for service. Thus, both process and service of process were proper. The Court denies Defendants' motions to dismiss for improper process (Rule 12(b)(4)) and improper service of process (Rule 12(b)(5)). (D.E. 14 at 6-9; D.E. 15 at 6-9.)[3]

### C.  Failure to State a Claim (Rule 12(b)(6))

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal citations and quotation marks omitted). Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show'[n]'-'that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). A motion to dismiss for

---

[3] Because the Court concludes that service is proper under Rule 4(h)(1)(B), it has no occasion to consider whether service is proper under Rule 4(h)(1)(A).

failure to state a claim under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." Lowrey v. Texas A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997).

Defendants raise several different Rule 12(b)(6) challenges. Defendants state that Plaintiff fails to state a claim with regard to fraud, most of Plaintiff's claims are barred by statutes of limitations, are precluded by the state court judgment, that Plaintiff has not sustained any actual damages as required by the TDCA, and Plaintiff has failed to state a common law unreasonable debt collection claim. Defendants Hull and Universal Surety also argue that Plaintiff's FDCPA and TDCA claims against them are insufficient. The Court first considers the statute of limitations and preclusion issues, and then turns to Defendants' arguments with regard to the sufficiency of Plaintiff's allegations.

### 1.    Statute of Limitations

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." Jones v. Alcoa, Inc., 339 F.3d 359, 366 (5th Cir. 2003); see Jones v. Bock, 549 U.S. 199, 215 (2007) ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.").

Defendants broadly contend that many, if not all, of Plaintiff's claims are barred by applicable statutes of limitation. Defendants state that FDCPA claims have a one year statute of limitations, state law debt collection claims are barred by a two year statute of limitations, and fraud claims are barred by a four year statute of limitations. As Plaintiff filed her Complaint on September 14, 2009, claims that accrued prior to September 14, 2008 (for FDCPA claims), September 14, 2007 (for TDCA claims), and September 14,

2005 (for fraud claims), are barred by the statute of limitations, according to Defendants. (D.E. 14 at 13-14; D.E. 15 at 13-14; D.E. 16 at 11; D.E. 17 at 11.)

In this case, Plaintiff's Complaint does not clearly state claims that are barred by the statute of limitations. The Complaint alleges that Defendant Hull twice abstracted the same judgment, first on May 15, 2002, and a second time on August 5, 2008. (D.E. 1 at 5.) The Complaint alleges violations of the FDCPA that occurred on or about October 28, 2008 and May 5, 2009. (D.E. 1 at 6.) Both of these actions occurred within one year of the filing of Plaintiff's Complaint. Nevertheless, the Complaint does not specify the dates of the other allegations, and it is not possible to determine whether the relevant statute of limitations has run with regard to those claims. Plaintiff is therefore ordered to replead her Complaint within ten (10) days of entry of this Order to provide specific dates for her allegations, wherever possible.

### 2.    Preclusion

When a federal court is asked to give claim preclusive effect to a state court judgment, the federal court must determine the preclusiveness of the state court judgment according to the principles of claim preclusion of the state from which the judgment was rendered. Exxon Mobil, 544 U.S. at 293. In Texas, "[r]es judicata or claim preclusion prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex. 1992). For a judgment to have claim preclusive effect in a later action, the proponent must demonstrate three elements: "(1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) the

second action [is] based on the same claims as were raised or could have been raised in the first action." Amstadt v. United States Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996); see also Smith v. Waste Management, Inc., 407 F.3d 381, 386 (5th Cir. 2005).  Collateral estoppel (issue preclusion) may be applied where "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." Sysco Food Servs. Inc. v. Trapnell, 890 S.W.2d 796, 801 (Tex. 1994); see In re Gupta, 394 F.3d 347, 351 n. 4 (5th Cir. 2004) (citing Trapnell).  In Texas, "[c]ollateral attacks on final judgments are generally disallowed because it is the policy of the law to give finality to the judgments of the courts."  Browning v. Prostok, 165 S.W.3d 336, 345 (Tex. 2005).

Defendants argue, in conclusory fashion, that "most claims" are barred by preclusion, in light of the state court default judgment.  Federal courts must give the same preclusive effect to a state court judgment that the state itself would give, Defendants contend, and since Plaintiff did not file a bill of review on the state court judgment within the four year time limit provided by Texas law, the judgment is now unassailable.  (D.E. 14 at 14-16; D.E. 15 at 14-16; D.E. 16 at 12-13; D.E. 17 at 12-13.)

The Court rejects Defendants' arguments.  As discussed above in the context of Rooker-Feldman, Plaintiff is not attempting to challenge the validity of the state court default judgment itself, but rather Defendants' practices in seeking to collect on the debt. Actions brought under the FDCPA do not depend upon the validity of the underlying debt, but rather "makes debt collectors liable for various 'abusive, deceptive, and unfair debt collection practices' regardless of whether the debt is valid."  McCartney v. First

City Bank, 970 F.2d 45, 47 (5th Cir. 1992) (quoting 15 U.S.C. § 1692(a)). Defendants therefore cannot demonstrate that this action "is based on the same claims as were raised or could have been raised in the first action," Amstadt, 919 S.W.2d at 652, or that "the facts sought to be litigated in the second action were fully and fairly litigated in the first action." Trapnell, 890 S.W.2d at 801. In fact, many of the allegations in the present lawsuit relate to Defendants' actions that allegedly occurred after the entry of default judgment, and thus could not have been raised in state court. As such, Defendants demonstrate neither issue nor claim preclusion. The Court declines to dismiss this action for failure to state a claim on this basis.

### 3.    Sufficiency of Allegations

Defendants raise a number of arguments with regard to the sufficiency of Plaintiff's claims for fraud, FDCPA and TDCA claims, and common law unreasonable debt collection claim. Defendants' arguments are considered separately.

### a.    Fraud Claims

"A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 185 n.8 (5th Cir. 2009). Federal Rule of Civil Procedure 9(b) provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "What constitutes 'particularity' will necessarily differ with the facts of each case. At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the

misrepresentation and what he obtained thereby.  Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out."  Benchmark Electronics, Inc. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir. 2003); see also Kanneganti, 565 F.3d at 186.  The term "generally," as used in the context of Rule 9, "is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid-though still operative-strictures of Rule 8."  Iqbal, 129 S. Ct. at 1954.

The Fifth Circuit has explained, "[i]n cases of fraud, Rule 9(b) has long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later. We apply Rule 9(b) to fraud complaints with 'bite' and 'without apology,' but also aware that Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading. Rule 9(b) does not 'reflect a subscription to fact pleading' and requires only 'simple, concise, and direct' allegations of the 'circumstances constituting fraud,' which after Twombly must make relief plausible, not merely conceivable, when taken as true."  Kanneganti, 565 F.3d at 186.  Where a plaintiff has alleged fraud against multiple defendants, "the complaint should inform each defendant of the nature of his alleged participation in the fraud."  Thornton v. Micrografx, Inc., 878 F. Supp. 931, 938 (N.D. Tex. 1995).

Defendants argue that Plaintiff's Complaint fails to plead common law fraud with the specificity required by Rule 9(b).  Defendants contend that Plaintiff has not "remotely provide[d] the who, what, when where and why of her fraud claims," and therefore the fraud claims must be dismissed.  Defendants also contend that Plaintiff has failed to satisfy Rule 9(b) because mere allegations that Defendants possessed fraudulent intent

are not sufficient under Rule 9(b), and Plaintiff has failed to attribute alleged misrepresentations or omissions to each Defendant separately.  (D.E. 14 at 11-13; D.E. 15 at 11-13; D.E. 16 at 8-11; D.E. 17 at 8-11.)

In this case, the Court finds that Plaintiff has done little more than repeat the elements of a fraud claim under Texas law. (D.E. 1 at 10-11.)  Plaintiff does not identify who made fraudulent statements, what those statements were, when or where they were made, or any other specifics that would provide Defendants notice of their alleged misconduct.  In short, Plaintiff has failed to plead the "particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  J.M. Huber Corp., 343 F.3d at 724. Plaintiff's Complaint thus fails to comply with Federal Rule 9(b).

Plaintiff's failure to comply with Rule 9(b) does not, however, warrant dismissal. "While courts routinely dismiss causes of action without leave to replead when they grant motions to dismiss for failure to state a claim, there is a general consensus that plaintiffs should be provided with an opportunity to amend their complaint to meet Rule 9(b)'s requirements before ordering dismissal."  Ryan v. Brookdale Int'l Sys., Inc., 2007 WL 3283655, at *7 (S.D. Tex. Nov. 6, 2007); see DB Western, Inc. - Texas v. Invista, S.A. R.L., 2009 WL 3297297, at *2 (S.D. Tex. Oct. 13, 2009) (holding that complaint did not comply with Rule 9(b), and ordering plaintiff to replead); see also U.S. ex rel. Williams v. Bell Helicopter Textron, Inc., 417 F.3d 450, 456 (5th Cir. 2005) (finding that "dismissal with prejudice . . . was unwarranted where . . . claims were dismissed on a Rule 12(b)(6) motion based on a lack of specificity in the complaint as required by Rule 9(b).").  Federal Rule of Civil Procedure 15(a) "reject[s] the approach that pleading is a

game of skill in which one misstep by counsel may be decisive to the outcome and accept[s] the principle that the purpose of pleading is to facilitate a proper decision on the merits."  Ryan, 2007 WL 3283655, at *7.  Thus, "there is a strong presumption in favor of granting leave to amend."  Fin. Acquisition Partners LP v. Blackwell, 440 F.3d 278, 291 (5th Cir. 2006).

Although the Court finds Plaintiff's fraud and intentional misrepresentation allegations insufficient under Rule 9(b), it denies Defendants' motion to dismiss the fraud claims.  Rather, Plaintiff is ORDERED to file an amended pleading that complies with the requirements of Rule 9(b) within ten (10) days after entry of this Order.

### b.  TDCA and FDCPA Claims Against Hull and Universal Surety

Defendants Universal Surety and Hull argue that Plaintiff has asserted in "conclusory fashion" FDCPA and TDCA claims against all Defendants, not specifically against them.  (D.E. 16 at 14, D.E. 17 at 14.)  Defendants state that these assertions do not comply with the pleading standards established in Twombly and Iqbal, and as conclusory allegations must be ignored under those standards, no claim is stated under the FDCPA or the TDCA.

The Court agrees that Plaintiff's allegations are conclusory and fail to identify which Defendants allegedly performed which actions.  However, as with Plaintiff's fraud allegations, the Court denies Defendants' Motions to Dismiss on this ground and instead ORDERS Plaintiff to file an amended complaint that complies with the pleading requirements of Rule 8(a) within ten (10) days after entry of this Order.

### c.  Actual Damages as Required by TDCA

The TDCA provides that "a person may sue for (1) injunctive relief to prevent or restrain a violation of this chapter; and (2) actual damages sustained as a result of a violation of this chapter."  Tex. Fin. Code § 392.403(a).  Texas courts have stated that a plaintiff who cannot prove actual damages cannot "successfully maintain an action under the [Texas Debt Collection] Act."  Jackson Law Office, P.C. v. Chappell, 37 S.W.3d 15, 30-31 (Tex. App.–Tyler 2000); Elston v. Resolution Servs., Inc., 950 S.W.2d 180, 185 (Tex. App.–Austin 1997) (affirming dismissal where plaintiff "did not provide summary-judgment proof that he suffered actual damages resulting from [defendant's] alleged violation of the Act.").  The Texas Supreme Court has not yet spoken on this issue.

Based on this precedent, Defendants argue that Plaintiff's claims must be dismissed "because she did not assert nor has she sustained actual damages as a result of [Defendants'] alleged violation" of the TDCA, and allegations of TDCA violations without actual damages fail to state a claim upon which relief can be granted.  (D.E. 14 at 16-17; D.E. 15 at 16-17; D.E. 16 at 14-15; D.E. 17 at 14-15.)

At this stage, the Court need not determine whether the TDCA in fact requires allegations of actual damages, or whether Plaintiff has sufficiently pled actual damages if it does so require.  Rather, the Court denies Defendants' Motions to Dismiss on this ground and ORDERS Plaintiff to file an amended complaint within ten (10) days after entry of this Order, in which Plaintiff makes clear whether she alleges actual damages.

### d.  Common Law Unreasonable Debt Collection Claim

The tort of "[u]nreasonable collection efforts is a Texas common-law intentional tort that lacks clearly defined elements."  B.F. Jackson, Inc. v. CoStar Realty Info., Inc.,

2009 WL 1812922, at *5 (S.D. Tex. May 20, 2009). "[T]he conduct deemed to constitute an unreasonable collection effort varies from case to case." <u>EMC Mortg. Corp. v. Jones</u>, 252 S.W.3d 857, 868 (Tex. App. – Dallas 2008). One "of the more precise legal descriptions delineates the conduct giving rise to the tort as 'efforts that amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm.'" <u>Id.</u>; <u>see</u> <u>Garcia v. Nueces County Employees Credit Union</u>, 2008 WL 4938271, at *7 (Tex. App. – Corpus Christi, Nov. 20, 2008) ("[C]onduct giving rise to the tort [of unreasonable collection] includes efforts that amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm."). As a general rule, "mental anguish alone is insufficient to sustain a recovery of damages, at common law, for unreasonable collection efforts." <u>McDonald v. Bennett</u>, 674 F.2d 1080, 1088 (5th Cir. 1982).

Defendants argue that, based on this case law, "Plaintiff's Complaint does not remotely allege the requisite elements of common law unreasonable debt collection nor does Plaintiff allege mental anguish or personal injury damages," and the claim must therefore be dismissed. (D.E. 14 at 17; D.E. 15 at 17; D.E. 16 at 15; D.E. 17 at 15.)

Although the case law on unfair debt collection in Texas is unclear, the Court finds that Plaintiff's general allegations do not clearly allege this cause of action. As with Plaintiff's other claims, the Court ORDERS Plaintiff to replead this allegation within ten (10) days after entry of this Order.

## IV.    Conclusion

For the reasons stated above, Defendants' Rule 12(b)(1), 12(b)(4), and 12(b)(5) and 12(b)(6) Motions to Dismiss are DENIED. (D.E. 14, 15, 16, 17.) Plaintiff, however,

is ORDERED to file an amended complaint that complies with the pleading requirements of Federal Rules of Civil Procedure 8(a) and 9(b) within ten (10) days after entry of this Order.  After Plaintiff files an amended complaint, Defendants may reargue their position that Plaintiff has failed to state a claim for relief and seek dismissal pursuant to Rule 12(b)(6).

SIGNED and ORDERED this 14th day of January, 2010.

Janis Graham Jack
United States District Judge